HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK BARKER,

        Plaintiff,

  v.

AMERIPRISE AUTO & HOME INSURANCE AGENCY, INC., and IDS PROPERTY CASUALTY INSURANCE CO.,

        Defendant.

CASE NO. 3:12-cv-05141-RBL

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     Before the Court is Defendant IDS Property Casualty Insurance Company's Motion for Summary Judgment (Dkt. #12). On January 22, 2011, firefighters responded to a fire at the residence of Mr. Barker, the plaintiff. Mr. Barker, who was on vacation at the time of the fire, arrived home to discover that in addition to the fire damage, some of his personal property was missing. Mr. Barker filed an insurance claim with IDS for the loss caused by the fire and the theft. Almost 6 months after the fire, IDS denied Mr. Barker's insurance claim and voided his policy based on IDS's own findings and on criminal charges filed against Mr. Barker for filing a false insurance claim. Specifically, IDS determined that Mr. Barker had made material

misrepresentations about the location of Mr. Barker's cell phone while he was on vacation, the amount of rent paid after the fire, and the ownership of a Nikon camera.

### I.     FACTUAL BACKGROUND

#### A.     The Fire and Insurance Claim

During the early morning of January 22, 2011, a fire ignited at Mr. Barker's home. (Def. Mot. for Summ. J. at 2; Pl. Resp. at 1.) The Tacoma police department determined that someone intentionally started the fire; however the identity of the perpetrator remains unknown. (First Am. Compl. at 3.) At the time of the fire, Mr. Barker was vacationing in the San Juan Islands with his girlfriend, Ms. Peters. (First Amend. Compl. at 3.) Upon his return, Mr. Barker stated he inspected the damaged house and noticed that several pieces of personal property were missing. (*Id*.)

On February 6, 2011, Mr. Barker filed a claim with his insurer, IDS Property Casualty Insurance Co., for $11,633.99—the replacement cost of the items he believed were stolen. (Answer at 2.) A little over a week later, IDS demanded Mr. Barker submit to an examination under oath and requested Mr. Barker's girlfriend, Ms. Peters, also submit to one. (Def.'s Mot. for Summ. J. at 3; Pl.'s Resp. at 2.) Four months after the claim was filed, on June 6th, Arson Detective Jason Brooks informed IDS that the Tacoma police had taken Mr. Barker into custody for Providing a False Proof (Wash. Rev. Code § 48.30.230) in relation to the IDS insurance claim. (Def.'s Mot. for. Summ. J. at 4).

At the beginning of July, IDS denied Mr. Barker's insurance claim and voided his policy for making material misrepresentations during the claim's process and engaging in fraud. (*Id*. at 4; Pl. Resp. at 2.) In early January of 2012, Mr. Barker initiated an action against IDS for a Declaratory Judgment for his loss. (Compl. at 1.) In late March, Mr. Barker entered an *Alford*

plea in relation to the charges for a False Claim of Proof against him, stating, "I maintain my innocence, but am entering this guilty plea to take advantage of the state's recommendations are [sic] that a trier of fact could find me guilty beyond a reasonable doubt . . . ." (Pl.'s Resp. at 3; Def.'s Mot. for Summ. J., Ex. 20 at 4.)

IDS claims that Mr. Barker's *Alford* plea entitles it to summary judgment. IDS also claims that even without the *Alford* plea, Mr. Barker made false assertions during the insurance investigation process which voided Mr. Barker's policy. (Def.'s Mot. for Summ. J. at 11).

**B.     The Disputed Representations**

Although IDS appears to question the truth of all of Mr. Barker's statements, its main argument boils down to three of Mr. Barker's assertions: (1) the location of Mr. Barker's work cell phone at the time of the fire; (2) the amount of Mr. Barker's rent after the fire; and (3) the ownership of a Nikon camera (or lack thereof).

First, IDS argues that Mr. Barker made a material misrepresentation regarding the location of his work cell phone at the time of the fire. According to IDS, Mr. Barker claimed that he turned in his work cell phone prior to leaving for the vacation that occurred during the fire. (Def.'s Mot. for Summ. J. at 3.) When the interviewer asked Mr. Barker why he no longer had his work phone, Mr. Barker stated, "Because they were—I was going on vacation—I had this time off, and so they wanted that so that we don't use it. We are not allowed to use them for personal use." (Rumbaugh Decl., Ex. 1, at 11; Thenell Decl., Ex. 4 at 5.) After the interviewer asked Mr. Barker if he turned the phone in before he left, Mr. Barker answered, "Correct." (*Id.*) In a later interview, Mr. Barker stated that he turned his work phone in before going on unpaid leave but had the phone during the fire. (Pl.'s Resp. at 3; Def.'s Mot. for Summ. J. at 4.) Mr. Barker did not seek reimbursement for the phone (because, of course, it was not his).

1          Additionally, IDS argues that Mr. Barker sought reimbursement for extra living expenses
2  that he did not incur.  (Def.'s Mot. for Summ. J. at 3.)  Despite not receiving rent from Mr.
3  Barker, Ms. Peters wrote a letter to IDS stating that Mr. Barker was renting a room at her
4  apartment for $600.00.  (Thenell Decl., Ex. 5 at 2; Rumbaugh Decl., Ex. 3 at 16.)  During the
5  IDS conducted examination, Ms. Peters clarified that she wrote the letter because Mr. Baker told
6  her it was required in order for reimbursement.  (Thenell Decl., Ex. 5 at 2; Rumbaugh Decl., Ex.
7  3 at 16)  Both Ms. Peters and Mr. Barker stated that an IDS agent was working with Mr. Barker
8  to figure out how to pay for extra living expenses. (Thenell Decl., Ex. 4 at 9.)  Although Mr.
9  Barker stated he had given Ms. Peters money for groceries as a form of rent, Ms. Peters stated
10 she had not received any money from Mr. Barker.  (Thenell Declaration, at 4; Rumbaugh
11 Declaration, Ex. 3 at 16.)  Mr. Barker conceded that at the time of the IDS investigation he had
12 not given her any money for rent, but stated, "[t]hat's what I'm going to help her out with."
13 (Thenell Decl., Ex. 5 at 7; Rumbaugh Decl., Ex. 1 at 12.)  At some point, Mr. Barker did give
14 Ms. Peters two $500.00 checks for living expenses.  (Pl.'s Resp. at 4; Thenell Decl., Ex. 17 at 3.)
15         Finally, IDS seems to dispute whether Mr. Barker ever owned a Nikon camera he
16 claimed was stolen the night of the fire.  (Defs.' Mot. for Summ. J. at 12.)  Almost $800.00 of
17 Mr. Barker's $11,633.99 missing property claim came from a Nikon camera.  (Def.'s Mot. for
18 Summ. J. at 12; Pl.'s Resp. at 2.)  Mr. Barker testified that he purchased the Nikon camera at
19 Costco in December of 2010—shortly before the fire.  (Rumbaugh Decl., Ex. 1 at 32.)  But
20 according to the Declaration of Probable Cause, Mr. Barker's Costco membership, going all the
21 way back to 2006, shows no purchase of a Nikon camera.  (Thenell Decl., Ex. 17 at 2.)
22 Similarly, the Declaration of Probable Cause states that Mr. Barker's bank account contains no
23 evidence of a withdrawal sufficient to support the purchase.  (*Id.*)
24

1     Several months after the fire, Mr. Barker's girlfriend, Diana Peters, purchased the same
2 camera from Costco as a replacement for Mr. Barker. (Pl. Resp. at 2.) Mr. Barker wrote Ms.
3 Peters a check for $850, but then returned the camera and received cash. (Def. Mot. for Summ.
4 J., Ex. 17 at 4.) After returning the camera, Mr. Barker submitted his check to Ms. Peters for the
5 camera to IDS for reimbursement. (*Id*.)

6     **C.**    **The IDS Insurance Policy**

7     All parties agree on the language of the IDS insurance policy. The policy protected
8 against "fire or lightening" and "theft or attempted theft, including loss of property from a known
9 place if it is likely that a theft has occurred." (First Am. Compl., Ex. 1 at 4.) IDS does not insure
10 against a theft "committed by an insured person." (*Id*. at 5.) According to the terms of the
11 Insurance Policy, if the replacement cost of personal property is over $500, IDS will not pay for
12 the full cost until "actual repair or replacement is completed." (*Id*. at 7). Most importantly, the
13 policy allows IDS to void coverage if "an insured person has [(1)] Intentionally concealed or
14 misrepresented any material fact or circumstances; or [(2)] Engaged in fraudulent conduct." (*Id*.
15 at 18.)

16     **II.**    **A**NALYSIS

17     **A.**    **Summary Judgment Standard**

18     Summary judgment is appropriate when, viewing the facts in the light most favorable to
19 the nonmoving party, there is no genuine issue of material fact which would preclude summary
20 judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to
21 summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to
22 interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for
23 trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of
24

evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

B. **The Insurance Policy**

The rules and principles governing the court's interpretation of an insurance contract are the same as with any contract. The court's primary goal is to ascertain the parties' intent. The interpretation of an insurance policy is a question of law, and the policy is construed as a whole with the court giving force and effect to each clause in the policy. *Queen City Farms v. Central National Ins. Co.*, 126 Wash. 2d 50, 59–60 (1994); *see also American Star Ins. Co. v. Grice*, 121 Wash. 2d 869, 874 (1993). The language of an insurance policy is interpreted in accordance with the way it would be understood by the average person, rather than in a technical sense. *Id.*

Under the insurance policy at issue here, the language is clear; if Mr. Barker knowingly made material misrepresentations regarding his insurance claim, the policy is void. In order for this Court to grant IDS's summary judgment motion, IDS must establish that no reasonable trier-of-fact could find that Mr. Barker's statements were made without an intent to deceive or that the statements were immaterial.

In Washington, an intent to deceive is presumed if the insurer establishes that the insured knowingly made a false statement. *See Ki Sin Kim v. Allstate Ins. Co., Inc.*, 153 Wash. App. 339, 356 (2009). If the insurer establishes a knowingly false statement, the burden shifts to the

insured to establish an honest motive or good faith. *Id*. But a "bare affirmation that there was no intent to deceive is not credible evidence of good faith." *Kay v. Occidental Life Ins. Co.*, 28 Wash. 2d 300, 302 (1947).

Additionally, a misrepresentation is material if "when made, it could have affected the insurer's investigation." *Allstate Ins. Co. v. Huston*, 123 Wash. App. 530, 539 (2004) (citing *Tran. v. State Farm Fire & Cas. Co.*, 136 Wash. 2d 214, 224 (1998)) (emphasis removed). Unless no reasonable minds could differ on the question of whether a statement was material, it is a question for the trier-of-fact. *See Ki Sin Kim*, 153 Wash. App. at 355.

### C. The Alford Plea

IDS argues that Mr. Barker's *Alford* plea establishes that there is no genuine issue of material fact. An *Alford* plea allows the defendant to plead guilty for sentencing purposes, while simultaneously maintaining his innocence. Under Washington Law, an *Alford* plea is not given a preclusive effect in a subsequent civil action. *Clark v. Baines*, 150 Wash. 2d 905, 917 (2004); *see also Safeco Ins. Co. of America v. McGrath*, 42 Wash. App. 58, 62 (1985) ("A criminal defendant must contend with powerful, coercive forces when presented with a choice of either (a) certain, prolonged incarceration if he exercises his right to proceed to trial and is found guilty of the crimes charged in the information . . . or (b) a strong probability of a deferred or suspended sentence if he pleads guilty to a reduced charge.").

If the *Alford* plea was accepted as an admission of false statements, it would give preclusive effect to the plea—contrary to Washington law. IDS attempts to circumvent the Washington rule by arguing that Mr. Barker admitted there was enough evidence for a trier-of-fact to convict beyond a reasonable doubt, so there must be enough evidence to convict by a preponderance of the evidence. But Mr. Barker's acknowledgement of the *existence* of evidence

is not an admission as to the *truth* of that evidence. Indeed, that distinction is the very point of an *Alford* plea. Nor was Mr. Barker's *Alford* plea an acknowledgment that no reasonable trier-of-fact could find him innocent. Throughout the plea, Mr. Barker specifically maintained his innocence and stated that he entered the plea deal "to take advantage of the state's recommendations . . . ." Because all evidence must be taken in the light most favorable to the non-moving party, even assuming that the *Alford* plea is admissible evidence (a decision not made here), it is not enough to establish that there is no genuine issue of material fact as to whether Mr. Barker knowingly made material misrepresentations.

Thus, IDS Motion for Summary Judgment based on the *Alford* plea is DENIED.

**D.     The Claimed Misrepresentations**

First, IDS argues that Mr. Barker knowingly made misrepresentations regarding the location of Mr. Barker's work cell phone and that the misrepresentations were material. Although IDS argues that Mr. Barker stated he turned his work cell phone in prior to leaving for vacation, Mr. Barker actually stated he no longer had his cell phone "[b]ecause they were—I was going on vacation—I had this time off, and so they wanted that so that we don't use it. We are not allowed to use them for personal use." He did not specify which vacation; he only specified that he did not currently have the work phone. In fact, Mr. Barker latter clarified that he took unpaid leave before his termination—he turned in the cell phone prior to the unpaid leave. Assuming the facts in the light most favorable to Mr. Barker, a reasonable jury could conclude that Mr. Barker was referring to the fact that he turned in his cell phone prior to his "unpaid leave," not vacation. Whether Mr. Barker intended to deceive IDS about the location of his work cell phone is a question for the jury.

In any event, a rational trier-of-fact could find that the location of the cell phone was immaterial. Contrary to IDS's claim, Mr. Barker's statement did not deny it the opportunity to look at Mr. Barker's phone records. And, IDS offers no evidence that Mr. Barker used the phone to perpetrate a fraud or lied about the phone's location. Indeed, IDS fails to explain the relevance of the phone at all.

Next, IDS argues that Mr. Barker knowingly misrepresented the amount of rent paid to Ms. Peters. Mr. Barker has testified that he began living with Ms. Peters after the fire. The parties agree that the two did not draw up an official rental agreement. Assuming the facts in the light most favorable to Mr. Barker, an IDS agent advised Mr. Barker as to a reasonable rate of reimbursement for rent, and Mr. Barker listed that amount so that he could eventually begin paying Ms. Peters. It appears that navigating the insurance-claim process was confusing at best for Mr. Barker, and he did not understand the instructions of the IDS agent he spoke with.

At the time of his interview, Mr. Barker testified that he had not yet begun paying Ms. Peters. Ms. Peters' testimony reflects the same. However, Ms. Peters and Mr. Barker disagree over whether Mr. Barker helped with rent by paying for groceries or helping out around the house. At some point, Mr. Barker did write two $500.00 checks to Ms. Peters. Who is telling the truth about how much money Mr. Barker paid, or what Mr. Barker meant by his statements, is a question for the jury.

Finally, IDS argues that Mr. Barker knowingly misrepresented material facts about the Nikon camera because IDS could not find any record of the purchase and because of the circumstances surrounding Mr. Barker's claim for reimbursement. Mr. Barker testified that he purchased his Nikon camera in December of 2010 at the Puyallup Costco. According to IDS, its follow up investigation revealed that Mr. Barker had never purchased a camera at Costco using

his Costco membership. Although IDS has produced evidence showing that Mr. Barker's testimony is possibly incorrect, it did not produce evidence to show that Mr. Barker knew the testimony was false. Importantly, it did not produce evidence that all purchases made by a customer at Costco are recorded on his or her account. Thus, the absence of a record at Costco does not necessarily compel the conclusion that an item was never purchased. The evidence of falsity presented by IDS is therefore insufficient to shift the burden to Mr. Barker.

Assuming the evidence in the light most favorable to Mr. Barker, Mr. Barker may have simply made a mistake of fact about the location of his purchase. Whether Mr. Barker knew his testimony about the purchase place of the camera was false is a question for the jury.

IDS also asserts that Mr. Barker knowingly misrepresented the purchase of the new camera because at the time Mr. Barker filed for reimbursement, he had already returned the camera. Both parties agree that Mr. Barker no longer had the camera in his possession at the time he filed for reimbursement. But IDS argues that because he knowingly filed an incorrect claim, IDS is entitled to the presumption that Mr. Barker intended to deceive. Although a bare assertion that there was no intent to deceive is not enough to overcome the presumption, Mr. Barker has done more than merely assert his good faith. Mr. Barker persuasively argued that he purchased the Nikon camera as a replacement in order to "perfect his claim" because the policy required the actual replacement of an item that cost over $500.00. In other words, IDS instructed Mr. Barker to go out and purchase a replacement before it could reimburse him. But, Mr. Barker may very well have decided that he would prefer the cash value of the camera given that his house and possessions had burned, and his life seems to have been in general disarray. Further, the policy did not require Mr. Barker to keep the replacement in his possession until he was

reimbursed. Whether Mr. Barker knowingly made a material misrepresentation about the replacement camera is a question for the jury.

Thus, IDS's Motion for Summary Judgment must be DENIED.

### III. CONCLUSION

For the reasons stated above, IDS's Motion for Summary Judgment [Dkt. # 9] is **DENIED**.

Dated this 29th day of August, 2012.

*/s/ Ronald B. Leighton*
Ronald B. Leighton
United States District Judge