1       HONORABLE RONALD B. LEIGHTON

2

3

4

5

6
                    UNITED STATES DISTRICT COURT
7                  WESTERN DISTRICT OF WASHINGTON
                             AT TACOMA
8

9       MARK BARKER,                          CASE NO. 3:12-cv-05141-RBL

                         Plaintiff,           ORDER DENYING DEFENDANT'S
10                                             MOTION FOR SUMMARY
            v.                                 JUDGMENT
11

12      AMERIPRISE AUTO & HOME
        INSURANCE AGENCY, INC., and IDS
13      PROPERTY CASUALTY INSURANCE
        CO.,
14
                         Defendant.
15

16          Before the Court is Defendant IDS Property Casualty Insurance Company's Motion for

17   Summary Judgment (Dkt. #12).  On January 22, 2011, firefighters responded to a fire at the

18   residence of Mr. Barker, the plaintiff.  Mr. Barker, who was on vacation at the time of the fire,

19   arrived home to discover that in addition to the fire damage, some of his personal property was

20   missing. Mr. Barker filed an insurance claim with IDS for the loss caused by the fire and the

21   theft.  Almost 6 months after the fire, IDS denied Mr. Barker's insurance claim and voided his

22   policy based on IDS's own findings and on criminal charges filed against Mr. Barker for filing a

23   false insurance claim.  Specifically, IDS determined that Mr. Barker had made material

24

misrepresentations about the location of Mr. Barker's cell phone while he was on vacation, the amount of rent paid after the fire, and the ownership of a Nikon camera.

## I.   FACTUAL BACKGROUND

### A.   The Fire and Insurance Claim

During the early morning of January 22, 2011, a fire ignited at Mr. Barker's home.  (Def. Mot. for Summ. J. at 2; Pl. Resp. at 1.)  The Tacoma police department determined that someone intentionally started the fire; however the identity of the perpetrator remains unknown.  (First Am. Compl. at 3.)  At the time of the fire, Mr. Barker was vacationing in the San Juan Islands with his girlfriend, Ms. Peters. (First Amend. Compl. at 3.)  Upon his return, Mr. Barker stated he inspected the damaged house and noticed that several pieces of personal property were missing.  (*Id*.)

On February 6, 2011, Mr. Barker filed a claim with his insurer, IDS Property Casualty Insurance Co., for $11,633.99—the replacement cost of the items he believed were stolen. (Answer at 2.)  A little over a week later, IDS demanded Mr. Barker submit to an examination under oath and requested Mr. Barker's girlfriend, Ms. Peters, also submit to one.  (Def.'s Mot. for Summ. J. at 3; Pl.'s Resp. at 2.)  Four months after the claim was filed, on June 6th, Arson Detective Jason Brooks informed IDS that the Tacoma police had taken Mr. Barker into custody for Providing a False Proof (Wash. Rev. Code § 48.30.230) in relation to the IDS insurance claim.  (Def.'s Mot. for. Summ. J. at 4).

At the beginning of July, IDS denied Mr. Barker's insurance claim and voided his policy for making material misrepresentations during the claim's process and engaging in fraud.  (*Id*. at 4; Pl. Resp. at 2.)  In early January of 2012, Mr. Barker initiated an action against IDS for a Declaratory Judgment for his loss.  (Compl. at 1.)  In late March, Mr. Barker entered an *Alford*

1  plea in relation to the charges for a False Claim of Proof against him,  stating, "I maintain my

2  innocence, but am entering this guilty plea to take advantage of the state's recommendations are

3  [sic] that a trier of fact could find me guilty beyond a reasonable doubt . . . ."  (Pl.'s Resp. at 3;

4  Def.'s Mot. for Summ. J., Ex. 20 at 4.)

5      IDS claims that Mr. Barker's *Alford* plea entitles it to summary judgment.  IDS also

6  claims that even without the *Alford* plea, Mr. Barker made false assertions during the insurance

7  investigation process which voided Mr. Barker's policy.  (Def.'s Mot. for Summ. J. at 11).

8      **B.      The Disputed Representations**

9      Although IDS appears to question the truth of all of Mr. Barker's statements, its main

10  argument boils down to three of Mr. Barker's assertions: (1) the location of Mr. Barker's work

11  cell phone at the time of the fire; (2) the amount of Mr. Barker's rent after the fire; and (3) the

12  ownership of a Nikon camera (or lack thereof).

13      First, IDS argues that Mr. Barker made a material misrepresentation regarding the

14  location of his work cell phone at the time of the fire.  According to IDS, Mr. Barker claimed

15  that he turned in his work cell phone prior to leaving for the vacation that occurred during the

16  fire.  (Def.'s Mot. for Summ. J. at 3.)  When the interviewer asked Mr. Barker why he no longer

17  had his work phone, Mr. Barker stated, "Because they were—I was going on vacation—I had

18  this time off, and so they wanted that so that we don't use it.  We are not allowed to use them for

19  personal use."  (Rumbaugh Decl., Ex. 1, at 11; Thenell Decl., Ex. 4 at 5.)  After the interviewer

20  asked Mr. Barker if he turned the phone in before he left, Mr. Barker answered, "Correct."  (*Id*.)

21  In a later interview, Mr. Barker stated that he turned his work phone in before going on unpaid

22  leave but had the phone during the fire.  (Pl.'s Resp. at 3; Def.'s Mot. for Summ. J. at 4.)  Mr.

23  Barker did not seek reimbursement for the phone (because, of course, it was not his).

24

1    Additionally, IDS argues that Mr. Barker sought reimbursement for extra living expenses

2 that he did not incur. (Def.'s Mot. for Summ. J. at 3.) Despite not receiving rent from Mr.

3 Barker, Ms. Peters wrote a letter to IDS stating that Mr. Barker was renting a room at her

4 apartment for $600.00. (Thenell Decl., Ex. 5 at 2; Rumbaugh Decl., Ex. 3 at 16.) During the

5 IDS conducted examination, Ms. Peters clarified that she wrote the letter because Mr. Baker told

6 her it was required in order for reimbursement. (Thenell Decl., Ex. 5 at 2; Rumbaugh Decl., Ex.

7 3 at 16) Both Ms. Peters and Mr. Barker stated that an IDS agent was working with Mr. Barker

8 to figure out how to pay for extra living expenses. (Thenell Decl., Ex. 4 at 9.) Although Mr.

9 Barker stated he had given Ms. Peters money for groceries as a form of rent, Ms. Peters stated

10 she had not received any money from Mr. Barker. (Thenell Declaration, at 4; Rumbaugh

11 Declaration, Ex. 3 at 16.) Mr. Barker conceded that at the time of the IDS investigation he had

12 not given her any money for rent, but stated, "[t]hat's what I'm going to help her out with."

13 (Thenell Decl., Ex. 5 at 7; Rumbaugh Decl., Ex. 1 at 12.) At some point, Mr. Barker did give

14 Ms. Peters two $500.00 checks for living expenses. (Pl.'s Resp. at 4; Thenell Decl., Ex. 17 at 3.)

15    Finally, IDS seems to dispute whether Mr. Barker ever owned a Nikon camera he

16 claimed was stolen the night of the fire. (Defs.' Mot. for Summ. J. at 12.) Almost $800.00 of

17 Mr. Barker's $11,633.99 missing property claim came from a Nikon camera. (Def.'s Mot. for

18 Summ. J. at 12; Pl.'s Resp. at 2.) Mr. Barker testified that he purchased the Nikon camera at

19 Costco in December of 2010—shortly before the fire. (Rumbaugh Decl., Ex. 1 at 32.) But

20 according to the Declaration of Probable Cause, Mr. Barker's Costco membership, going all the

21 way back to 2006, shows no purchase of a Nikon camera. (Thenell Decl., Ex. 17 at 2.)

22 Similarly, the Declaration of Probable Cause states that Mr. Barker's bank account contains no

23 evidence of a withdrawal sufficient to support the purchase. (*Id.*)

24

1    Several months after the fire, Mr. Barker's girlfriend, Diana Peters, purchased the same

2    camera from Costco as a replacement for Mr. Barker.  (Pl. Resp. at 2.)  Mr. Barker wrote Ms.

3    Peters a check for $850, but then returned the camera and received cash.  (Def. Mot. for Summ.

4    J., Ex. 17 at 4.)  After returning the camera, Mr. Barker submitted his check to Ms. Peters for the

5    camera to IDS for reimbursement.  (*Id.*)

6    **C.    The IDS Insurance Policy**

7        All parties agree on the language of the IDS insurance policy. The policy protected

8    against "fire or lightening" and "theft or attempted theft, including loss of property from a known

9    place if it is likely that a theft has occurred."  (First Am. Compl., Ex. 1 at 4.)  IDS does not insure

10   against a theft "committed by an insured person."  (*Id.* at 5.)  According to the terms of the

11   Insurance Policy, if the replacement cost of personal property is over $500, IDS will not pay for

12   the full cost until "actual repair or replacement is completed." (*Id.* at 7.)  Most importantly, the

13   policy allows IDS to void coverage if "an insured person has [(1)] Intentionally concealed or

14   misrepresented any material fact or circumstances; or [(2)] Engaged in fraudulent conduct." (*Id.*

15   at 18.)

16                          **II.    ANALYSIS**

17   **A.    Summary Judgment Standard**

18        Summary judgment is appropriate when, viewing the facts in the light most favorable to

19   the nonmoving party, there is no genuine issue of material fact which would preclude summary

20   judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

21   summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

22   interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

23   trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

24

1   evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

2   *Square D Co.*, 68 F.3d 1216, 1221 (9ᵗʰ Cir. 1995).  Factual disputes whose resolution would not

3   affect the outcome of the suit are irrelevant to the consideration of a motion for summary

4   judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

5   "summary judgment should be granted where the nonmoving party fails to offer evidence from

6   which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at

7   1220.

8   **B.    The Insurance Policy**

9   The rules and principles governing the court's interpretation of an insurance contract are

10   the same as with any contract.  The court's primary goal is to ascertain the parties' intent.  The

11   interpretation of an insurance policy is a question of law, and the policy is construed as a whole

12   with the court giving force and effect to each clause in the policy. *Queen City Farms v. Central*

13   *National Ins. Co.*, 126 Wash. 2d 50, 59–60 (1994); *see also American Star Ins. Co. v. Grice*, 121

14   Wash. 2d 869, 874 (1993).  The language of an insurance policy is interpreted in accordance

15   with the way it would be understood by the average person, rather than in a technical sense. *Id.*

16   Under the insurance policy at issue here, the language is clear; if Mr. Barker knowingly

17   made material misrepresentations regarding his insurance claim, the policy is void.  In order for

18   this Court to grant IDS's summary judgment motion, IDS must establish that no reasonable trier-

19   of-fact could find that Mr. Barker's statements were made without an intent to deceive or that the

20   statements were immaterial.

21   In Washington, an intent to deceive is presumed if the insurer establishes that the insured

22   knowingly made a false statement. *See Ki Sin Kim v. Allstate Ins. Co., Inc.*, 153 Wash. App.

23   339, 356 (2009).  If the insurer establishes a knowingly false statement, the burden shifts to the

24

1    insured to establish an honest motive or good faith.  *Id.*  But a "bare affirmation that there was no

2    intent to deceive is not credible evidence of good faith."  *Kay v. Occidental Life Ins. Co.*, 28

3    Wash. 2d 300, 302 (1947).

4         Additionally, a misrepresentation is material if "when made, it could have affected the

5    insurer's investigation."  *Allstate Ins. Co. v. Huston*, 123 Wash. App. 530, 539 (2004) (citing

6    *Tran. v. State Farm Fire & Cas. Co.*, 136 Wash. 2d 214, 224 (1998)) (emphasis removed).

7    Unless no reasonable minds could differ on the question of whether a statement was material, it

8    is a question for the trier-of-fact.  *See Ki Sin Kim*, 153 Wash. App. at 355.

9    **C.      The Alford Plea**

10        IDS argues that Mr. Barker's *Alford* plea establishes that there is no genuine issue of

11   material fact.  An *Alford* plea allows the defendant to plead guilty for sentencing purposes, while

12   simultaneously maintaining his innocence.  Under Washington Law, an *Alford* plea is not given a

13   preclusive effect in a subsequent civil action.  *Clark v. Baines*, 150 Wash. 2d 905, 917 (2004);

14   *see also Safeco Ins. Co. of America v. McGrath*, 42 Wash. App. 58, 62 (1985) ("A criminal

15   defendant must contend with powerful, coercive forces when presented with a choice of either

16   (a) certain, prolonged incarceration if he exercises his right to proceed to trial and is found guilty

17   of the crimes charged in the information . . . or (b) a strong probability of a deferred or

18   suspended sentence if he pleads guilty to a reduced charge.").

19        If the *Alford* plea was accepted as an admission of false statements, it would give

20   preclusive effect to the plea—contrary to Washington law.  IDS attempts to circumvent the

21   Washington rule by arguing that Mr. Barker admitted there was enough evidence for a trier-of-

22   fact to convict beyond a reasonable doubt, so there must be enough evidence to convict by a

23   preponderance of the evidence.  But Mr. Barker's acknowledgement of the ***existence*** of evidence

24

1   is not an admission as to the ***truth*** of that evidence.  Indeed, that distinction is the very point of

2   an *Alford* plea.  Nor was Mr. Barker's *Alford* plea an acknowledgment that no reasonable trier-

3   of-fact could find him innocent.  Throughout the plea, Mr. Barker specifically maintained his

4   innocence and stated that he entered the plea deal "to take advantage of the state's

5   recommendations . . . ."  Because all evidence must be taken in the light most favorable to the

6   non-moving party, even assuming that the *Alford* plea is admissible evidence (a decision not

7   made here), it is not enough to establish that there is no genuine issue of material fact as to

8   whether Mr. Barker knowingly made material misrepresentations.

9          Thus, IDS Motion for Summary Judgment based on the *Alford* plea is DENIED.

10         **D.      The Claimed Misrepresentations**

11         First, IDS argues that Mr. Barker knowingly made misrepresentations regarding the

12  location of Mr. Barker's work cell phone and that the misrepresentations were material.

13  Although IDS argues that Mr. Barker stated he turned his work cell phone in prior to leaving for

14  vacation, Mr. Barker actually stated he no longer had his cell phone "[b]ecause they were—I was

15  going on vacation—I had this time off, and so they wanted that so that we don't use it.  We are

16  not allowed to use them for personal use."  He did not specify which vacation; he only specified

17  that he did not currently have the work phone.  In fact, Mr. Barker latter clarified that he took

18  unpaid leave before his termination—he turned in the cell phone prior to the unpaid leave.

19  Assuming the facts in the light most favorable to Mr. Barker, a reasonable jury could conclude

20  that Mr. Barker was referring to the fact that he turned in his cell phone prior to his "unpaid

21  leave," not vacation.  Whether Mr. Barker intended to deceive IDS about the location of his work

22  cell phone is a question for the jury.

23

24

1    In any event, a rational trier-of-fact could find that the location of the cell phone was

2    immaterial. Contrary to IDS's claim, Mr. Barker's statement did not deny it the opportunity to

3    look at Mr. Barker's phone records.  And, IDS offers no evidence that Mr. Barker used the phone

4    to perpetrate a fraud or lied about the phone's location.  Indeed, IDS fails to explain the

5    relevance of the phone at all.

6    Next, IDS argues that Mr. Barker knowingly misrepresented the amount of rent paid to

7    Ms. Peters.  Mr. Barker has testified that he began living with Ms. Peters after the fire.  The

8    parties agree that the two did not draw up an official rental agreement.  Assuming the facts in the

9    light most favorable to Mr. Barker, an IDS agent advised Mr. Barker as to a reasonable rate of

10   reimbursement for rent, and Mr. Barker listed that amount so that he could eventually begin

11   paying Ms. Peters.  It appears that navigating the insurance-claim process was confusing at best

12   for Mr. Barker, and he did not understand the instructions of the IDS agent he spoke with.

13   At the time of his interview, Mr. Barker testified that he had not yet begun paying Ms.

14   Peters.  Ms. Peters' testimony reflects the same.  However, Ms. Peters and Mr. Barker disagree

15   over whether Mr. Barker helped with rent by paying for groceries or helping out around the

16   house.  At some point, Mr. Barker did write two $500.00 checks to Ms. Peters.  Who is telling

17   the truth about how much money Mr. Barker paid, or what Mr. Barker meant by his statements,

18   is a question for the jury.

19   Finally, IDS argues that Mr. Barker knowingly misrepresented material facts about the

20   Nikon camera because IDS could not find any record of the purchase and because of the

21   circumstances surrounding Mr. Barker's claim for reimbursement.  Mr. Barker testified that he

22   purchased his Nikon camera in December of 2010 at the Puyallup Costco.  According to IDS, its

23   follow up investigation revealed that Mr. Barker had never purchased a camera at Costco using

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 9

1    his Costco membership.  Although IDS has produced evidence showing that Mr. Barker's

2    testimony is possibly incorrect, it did not produce evidence to show that Mr. Barker knew the

3    testimony was false.  Importantly, it did not produce evidence that all purchases made by a

4    customer at Costco are recorded on his or her account.  Thus, the absence of a record at Costco

5    does not necessarily compel the conclusion that an item was never purchased.  The evidence of

6    falsity presented by IDS is therefore insufficient to shift the burden to Mr. Barker.

7           Assuming the evidence in the light most favorable to Mr. Barker, Mr. Barker may have

8    simply made a mistake of fact about the location of his purchase.  Whether Mr. Barker knew his

9    testimony about the purchase place of the camera was false is a question for the jury.

10          IDS also asserts that Mr. Barker knowingly misrepresented the purchase of the new

11   camera because at the time Mr. Barker filed for reimbursement, he had already returned the

12   camera.  Both parties agree that Mr. Barker no longer had the camera in his possession at the

13   time he filed for reimbursement.  But IDS argues that because he knowingly filed an incorrect

14   claim, IDS is entitled to the presumption that Mr. Barker intended to deceive.  Although a bare

15   assertion that there was no intent to deceive is not enough to overcome the presumption, Mr.

16   Barker has done more than merely assert his good faith.  Mr. Barker persuasively argued that he

17   purchased the Nikon camera as a replacement in order to "perfect his claim" because the policy

18   required the actual replacement of an item that cost over $500.00.  In other words, IDS instructed

19   Mr. Barker to go out and purchase a replacement before it could reimburse him.  But, Mr. Barker

20   may very well have decided that he would prefer the cash value of the camera given that his

21   house and possessions had burned, and his life seems to have been in general disarray.  Further,

22   the policy did not require Mr. Barker to keep the replacement in his possession until he was

23

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 10

1   reimbursed.  Whether Mr. Barker knowingly made a material misrepresentation about the

2   replacement camera is a question for the jury.

3          Thus, IDS's Motion for Summary Judgment must be DENIED.

4                              **III.   CONCLUSION**

5          For the reasons stated above, IDS's Motion for Summary Judgment [Dkt. # 9] is

6   **DENIED**.

7

8          Dated this 29th day of August, 2012.

9

10

                                    Ronald B. Leighton
11                                  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 11